(No. 2750.   March 5, 1924.)

## SANTA FE WATER & LIGHT CO. v. SANTA FE COUNTY et al.

### SYLLABUS BY THE COURT.

1.   The transcript of the record was filed May 24, 1922; assignments of error were filed by the county, as appellant from that part of the judgment adversely affecting it, on July 29, 1922; the cause was submitted during the regular submission term last September; and no brief whatever has been filed by said county.   **Held,** such appeal will be dismissed under rule 9 of this court.

2.   The limitation against the payment of unpaid debts provided by the Bateman Act (sections 1227-1233, Code 1915) applies to debts created for necessities such as water and lights for use at a courthouse, or others which may be arbitrarily placed against a county or other municipality, with the same force as to those that may be voluntarily created by such county or municipality.

3.   A judgment cannot be rendered against a county for water and lights furnished to be used at its courthouse, where the funds derived from its income for the current year during which such debts were created have been entirely exhausted and no money is available with which to pay the same.

Appeal from District Court, Santa Fe County; Holloman, Judge.

Action by Santa Fe Water & Light Company against the County of Santa Fe and another.   From the judgment rendered, all parties appeal.   Defendants' appeal dismissed, and judgment affirmed.

Francis C. Wilson and Harold Perry, both of Santa Fe, for appellee and cross-appellant.

A. M. Edwards, of Santa Fe, for appellants and cross-appellees.

### OPINION OF THE COURT.

BRATTON, J.   The appellee and cross-appellant Santa Fe Water & Light Company will be denominated as the water and light company, and the appellant and cross-appellee county of Santa Fe and board of county commissioners thereof will be referred to as the county.

The water and light company filed this suit to recover judgment against the county in the sum of $622.38 covering charges for water and light furnished the county during the fiscal year 1920 for use at its courthouse. It was alleged that $207.60 of such sum was incurred during the quarter ending June 30th of that year, $281.95 thereof was incurred during the quarter ending September 30th, and the remaining $132.83 during the quarter ending December 31st. The county answered admitting the sum due, and that the various items thereof were incurred at the time specified, but that such indebtedness could not be paid because the money actually collected during that year had been exhausted, or, to otherwise express it, that the county's liabilities and obligations incurred during said year exceeded its income, and that the unpaid debts could therefore not be paid except from the delinquent taxes of said year which might be thereafter collected. To this the water and light company replied, asserting that such indebtedness was incurred for necessities for the continued use of the courthouse, and hence essential to the conduct of the county's business, and for that reason the provisions of section 1227, Code 1915, commonly called the Bateman Act, did not apply, and further that during the fiscal year of 1920 the county collected sufficient money with which to fully pay all debts incurred during that year, but that a part of said revenues had been mis-applied and expended in the payment of debts not incurred during said year. The case was submitted to the trial court upon an agreed statement of facts, which shows that the gross revenues of said county for general county purposes during the year 1920 were $12,458.03; that during said year, as a whole, the liabilities incurred aggregated $17,157.65, thus demonstrating that the liabilities exceeded the income by $4,699.62. It was further shown that during the quarter ending March 31st, the libailities incurred amounted to $3,904.07, while the expenditures amounted to $741; during the quarter ending June 30th, the liabilities incurred amounted to $2,945.73, while the expenditures

summed up $4,042.78; that during the quarter ending September 30th, the liabilities incurred equaled $2,860.-56 and the expenditures equaled $234.46; and during the quarter ending December 31st, the liabilities incurred amounted to $7,447.29, and no showing was made with respect to the sum expended. It was further shown that during the quarter ending March 31st, there was expended in payment of debts created prior to the fiscal year of 1920 the sum of $6,860.91, and that during the quarter ending June 30th, there was likewise expended $377. The trial court made findings in which the facts were substantially found, although the figures were somewhat differently grouped. Predicated thereon, judgment was rendered in favor of the water and light company for the sums of $207.60 and $281.95 with interest, being the accounts incurred during the quarters ending June 30th and September 30th, respectively, and denying to said company any relief upon its account incurred during the quarter ending December 31st. Each party prayed and was granted a direct appeal from the respective parts of said judgment adversely affecting it.

[1]   1. The transcript of the record was filed in this court on May 24, 1922. Assignments of error were filed by the county on July 29, 1922. The last brief of the water and light company was filed July 28, 1922; the case was set for and regularly submitted during our submission term last September, and yet no brief whatever has been filed by the county. Under these conditions, we feel constrained to dismiss the county's appeal as provided by rule 9 of this court, which is in this language:

Where record shows a default in filing of brief in chief thirty days, or more, the cause will stand submitted and independent of action on part of adverse party the appeal will be dismissd, and such dismissal shall not be set aside except for good cause shown and upon application made within twenty days of date of such dismissal."

We do not mean to hold that we will invoke the rule in every case where briefs in chief are not filed within

the required time, but we will do so in a case of this character where it appears the appeal has been fully abandoned.

[2] 2. With the appeal or the county disposed of, there remains but one question in the case, as the effect of diverting a part of the revenues to the payment of debts incurred prior to the fiscal year of 1920 has not been argued here. The water and light company complains of that part of the judgment denying it recovery upon its claim for services rendered during the quarter ending December 31st. It is conceded that during this quarter the expenditures exceeded the income, but the contention proceeds upon the theory that the water and light so furnished were necessary for the continued use of the courthouse and, conse· quently, for the operation and conduct of the county's business, and hence do not come within the limitation contained within the Bateman Act (Code 1915, §§ 1227 to 1233, inclusive). In other words, as we understand the contention, it is that the limitation contained within the act applies only to those debts and obligations voluntarily created or incurred by a county, city, town, or school district, and does not include or comprehend items which are directly or by necessary implication laid upon them by the Legislature, or, we might say, such obligations as are fixed by law or involuntarily placed against such municipalities. The particular section of the act in question is section 1227, Code 1915, which provides:

"After March 12, 1897, it shall be unlawful for any board of county commissioners, city council, town trustees, board of education, board of trustees, or board of school directors of any school district, for any purpose whatever to become indebted or contract any debts of any kind or nature whatsoever during any current year which, at the end of such current year, is not and cannot then be paid out of the money actually collected and belonging to that current year, and any and all kind of indebtedness for any current year which is not paid and cannot be paid, as above provided for is hereby declared to be null and void, and any officer of any county, city, town, school district or board of education, who shall issue any certificate or other form of approval of indebtedness separate from the account filed in the first place or who

shall, at any time, use the fund belonging to any current year for any other purpose than paying the current expenses of that year, or who shall violate any of the provisions of this section, shall be deemed guilty of a misdemeanor and upon a conviction thereof shall be fined not less than one hundred nor more than one thousand dollars or be confined in the county jail for a period of not more than six months or by both such fine and imprisonment, in the discretion of the court trying the case."

Many cases from other states have been cited in an effort to sustain this contention. Most of them deal with constitutional provisions against the creation of debts or obligations exceeding a certain maximum. We think a review or analysis of these cases unnecessary, as the question has been fully decided by this court.

In James v. Board of County Commissioners, 24 N. M. 509, 174 Pac. 1001, the plaintiff was sheriff of Socorro county and, as such, sued to recover a balance alleged to be due for unpaid salaries of himself and deputies, necessary and authorized office expenses, salaries of jailer and guard, and cost of feeding prisoners. The defense there interposed was the same as here, namely, that the income for the current year during which obligations were incurred had been exhausted and there was no money with which to pay them. It was held that all of the items in controversy fell within the inhibition of the Bateman Act except that of boarding prisoners. With respect to that it was held that under the express language contained in the proviso contained in section 1229 of the Code, it was a preferred claim and should be paid in full before any other bill, fees, or salaries are paid, either in full or on pro rata basis, but that no such distinction was made in the trial court, and hence the plaintiff could not change or shift his position by making a new and different contention on appeal, and hence he was denied any recovery whatever. Certainly, the salaries of the sheriff and his deputies were legal obligations against the county created by law; they were obligations in which the county had nothing to do with their creation; they were purely involuntarily created so far as the county was concerned; and yet

it was held that they came within the prohibition of the statute and were therefore void, except so far as they might be paid from the collection of delinquent taxes for the year in question. And the services of such peace officers as a sheriff and his deputies are certainly necessities. They are necessary to the exercise of certain fundamental functions of government such as the protection of life, liberty, and the rights of property. These functions of government are elementary and are no less necessities than water and light for use at a courthouse, and yet it was held in that case that the debt due for such services came within the limitation contained within the act. It was there well said that the object of the act was to require counties, cities, towns, and school districts to live within their annual income provided for such purposes.

The next case in which the effect of the statute in question was discussed was Optic Publishing Co. v. Board of Commissioners, 27 N. M. 371, 202 Pac. 124. There it was sought to secure judgment against the county for work done and supplies furnished. The nature of the services or the kind of supplies is not disclosed from the opinion, so that the case cannot be considered as authority upon the exact question involved in this case.

In the later case of Sena v. Board of County Commissioners, 27 N. M. 462, 202 Pac. 984, however, practically the same question was involved and was decided adversely to the contention made here by the water and light company. That was a suit to recover upon a claim due for publishing the delinquent tax list of the county. The provisions of the Bateman Act were pleaded in defense thereto, and it was contended that the Legislature had made it mandatory upon the county officials to publish in English and Spanish the tax list, with the consequential costs thereof, and that, such expense being one arbitrarily created against a county by the Legislature, it did not come within the intendment and purview of the act, but this court held adversely to that contention, saying that the

terms of section 1227, supra, were very broad and made no such exception, and that if the Legislature had intended such a result it would have so provided in express language.  It was there said:

"Section 17 of chapter 80, Laws 1917, provides a penalty for an officer failing to perform a duty imposed by the act. In section 3 of chapter 43 of the Session Laws of 1919 the Legislature specifies what notices of tax sales shall contain.

"It is insisted by the appellee that section 1, chapter 80, Laws 1917, making it the duty of the treasurer to publish the delinquent tax list under certain penalties, creates a form of indebtedness which is not within the prohibition of section 1227, Code 1915, forbidding a county 'for any purpose whatever to become indedted or contract any debts of any kind or nature whatsoever during any current year', etc. The language of section 1227 is very broad and does not make an exception of an indedtedness of this kind.  A subsequent section (1229) provides that a preference shall be given to bills contracted for the boarding of prisoners, but there is no other exception nor preference given in the law. Under the language of the statute, if the indebtedness was in excess of the income it was void, and it is made unlawful under a heavy penalty for any of the officers named in the statute to violate any of the provisions of said section.  The Bateman Act (Code 1915, §§ 1227 to 1233, inclusive) was originally Laws of 1897, c. 42, §§ 15 to 21, inclusive.  At the time of the passage of this act there was in force the law of 1882 (chapter 62, §§ 63 and 64) being C. L. 1897, §§ 4075 and 4076, providing that delinquent tax notices should be published.  No exception to such indebtedness or expense to the county was included with the Bateman Act, supra.  Nor do any of the subsequent acts above referred to and quoted herein make any exception as to such indebtedness.  If it had been the purpose o f the Legislature to make an exception in case of the claims for the publication of the delinquent tax lists, it would have been an easy matter to have done so.  In our opinion the law makes no such exception, and the indebtedness of the county incurred for the publication of such delinquent tax lists is no different from any other indebtedness and entitled to no preference.

"We have held in James v. County Commissioners, 24 N. M. 509, 174 Pac. 1001, and in a recent decision of this court (No. 2568, Optic Publishing Co. v. Board of County Commissioners of San Miguel County, 27 N. M. 371, 202 Pac. 124), that a judgment cannot be taken against a county for current expenses, where it appears, as in this case and in the two cases cited above, that the claim has been allowed by the county commissioners and has not been paid for the reason that there are insufficient funds for that year with which to pay it.  It is sought to distinguish the present case from the ones just cited, on the ground that such indebtedness is an exception, and should not be considered

within the purview of the Bateman Act; i. e., section 1227 et. seq., Code 1915. As before stated, we are unable to concur in this view.

[3] It appears therefore, that the case referred to is decisive of the question here presented. The duty to publish the delinquent tax list with the incidental cost thereof was not a matter resting within the judgment or discretion of the county commissioners, or other county officials. They had nothing to say with respect to whether such a debt should be created. It was arbitrarily made their duty to publish it and the county to pay the cost thereof, and certainly such a proceeding is necessary to the successful conduct of the business of the county. We think the purpose served by the act in question is to force the enumerated municipal corporations to keep within their income, in order to prevent the creation of excessive obligations which cannot be currently paid, but lap over from year to year with the result that creditors are long delayed in the collection of their just debts and the municipality is peoned in its effort to pay. And no exception, save boarding prisoners, is made in the language used. On the conrtary, it is exceedingly broad in scope and sweeping in effect. Had it been intended by the Legislature that only such debts as are voluntarily created by a county or other municipality are excluded from its operation, the natural and logical thing would have been to say so in clear and unambiguous language. This was not done. On the contrary all debts except the one class mentioned are included and can only be paid in whole or in part from the money arising from delinquent taxes which may be subsequently collected.

From what has been said it appears the case was disposed of by the trial court upon the theory that, under the act in question, a fiscal year may be divided into quarters and debts created during each quarter determined according to the status created during that particular quarter. The correctness of this is not before us, since the appeal of the county

has been dismissed. We do not desire, however, to be understood as adopting this view. We express no opinion upon it.

From the reasons stated, the appeal of the county will be dismissed, and that part of the judgment appealed from by the water and light company will be affirmed, and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.