[No. 2996.   Oct. 1, 1924]

## BACA v. BOARD OF COM'RS OF SOCORRO COUNTY et al.

### SYLLABUS BY THE COURT.

1. Where, for the purpose of fixing the salaries of county officers, the several counties of the state are classified by the Legislature upon the basis of the final full assessed valuation of the property therein as shown by the tax rolls of a given year, and it is provided that such classification shall continue until a specified date, and that the counties shall then, and each four years thereafter, be reclassified upon the basis of the assessed valuation as finally fixed for the preceding year, the fact that such valuations are reduced between the dates or reclassification so fixed, by reason of the creation of a new county by the Legislature from the territorial limits of a county so classified, does not operate to change the classification of such county, in the absence of a general law so providing.

2. Section 1 of chapter 16 of the Laws of 1919. providing for the levy by boards of county commissioners of "a tax sufficient to pay the salaries and expenses of county officers whose emoluments and expenses have heretofore been paid out of the salary fund as created by chapter 12 of the 1915 Session Laws of New Mexico," merely substitutes the sum so to be levied for the "eight per centum" of all taxes and licenses collected each year, which was by section 13 of this act required to be turned into the county salary fund.

3. Section 15 of the County Salary Act of 1915 is not repealed or amended in any way by chapter 16 of the Laws of 1919, except as to the disposition of the surplus remaining in the county salary fund at the end of the calendar year.

4. Under the decision in James v. Board of County Commissioners of Socorro County, 24 N. M. 509, 174 P. 1001, the provisions of the Bateman Act were not repealed by chapter 16 of the Acts of 1919 providing for the payment of salaries of county officials.

5. The county commissioners of Socorro county have no authority to include in the budget for 1925 an amount to reimburse a deficiency in the salaries of county officers due in 1923, caused by the fact that through an erroneous classification of Socorro as a second-class county, instead

of a first-class county, at the time of levying taxes in 1922, an inadequate amount was levied to pay the salaries of the county officers upon the basis of its classification as a first-class county.

Appeal from District Court, Socorro County; Owen, Judge.

Action by J. S. Baca against the Board of County Commissioners of Socorro County and another. From a judgment for plaintiff, defendants appeal. Reserved, and remanded, with instruction.

Summers Burkhart, of Albuquerque, for appellants.

M. C. Spicer, of Socorro, for appellee.

### OPINION OF THE COURT

FORT, J. On June 26, 1924, there was issued by the clerk of the district court of Socorro county, an amended writ of mandamus upon the information of J. S. Baca, relator, against the board of county commissioners of Socorro county and the state tax commission of the state of New· Mexico. The writ recites in substance that the relator has, since January 1, 1923, been the duly elected, qualified, and acting sheriff of Socorro county; that Socorro county was classified by the County Salary Act (Laws 1915, c. 12) as a county of the first class, and in 1921 was classified by the state auditor as a ,county of the first class under the provisions of section 19 of this act; that it was the duty of the county commissioners, in 1922, to have prepared, and of the state tax commission to have approved, budget estimates sufficient to raise the sum of approximately $25,500 from the face of the tax rolls of Socorro county for the salary fund for the year 1923; that instead of making and approving such estimates, the state tax commission pretended to reclassify Socorro county, among other counties, and by such reclassification designated it as a county of the second class, and ordered the commissioners to make budget estimates for the salaries of county officers for the year 1923 in the amount of $18,464.91, which was thereafter approved; that the

sum so fixed was only sufficient to pay the salaries of such officers on the basis of officers of a county of the second class, and insufficient to pay such salaries on the basis of officers of counties of the first class, and that there is due to the relator and other county officers of Socorro county for the last quarter of the year 1923 the sum of $5,726,36, by reason of the failure of the defendants to perform their duty as provided by law, and the county officers have therefore been unable to receive their salaries in full for the year 1923; that the board of county commissioners failed in 1923 to submit to the state tax commission, and the state tax commission failed to approve, a budget providing for the payment of the sums so due the county officers of Socorro county for 1923, and threaten not to do so in the year 1924.

The board of county commissioners are directed to include in the budget estimate for 1924 an additional levy to cover such deficiency in salaries for 1923, over and above the amount necessary for the current expenses of Socorro county for 1925, which, with other tax levies, shall not exceed the 5-mill limit provided by law for county purposes. The county filed no answer, but the state tax commission filed its answer admitting the substantial allegations as to the failure to levy the tax, but denying that Socorro county was a first-class county, because, by the creation of Catron county, by chapter 28, Laws 1921, the assessed valuation of property in Socorro county was reduced below $14,000,000. They further answered that in the event insufficient money to pay the salaries in full was collected in 1923, under the levies made for that purpose in 1922, they are entitled to receive in full payment of such salaries only their pro rata share, with other creditors of the county, of the money collected under the levies for salary purposes and for the general county funds during that year.

The case was submitted upon the pleading and upon the following stipulation:

"It is hereby stipulated between said relator and said de-

fendant, the state tax commission, by their respective attorneys, subject to the objections hereinafter set forth:

"(1) That the tax rolls of Socorro county for the years 1920, 1921, 1922, and 1923 show that the assessed valuation d: said county for said years, and that the assessed valuation of the property segregated by the creation of Catron county and that the budget estimates approved by the state tax commission and the tax levies on the tax rolls for the years 1922 and 1923 for the current expenses of said county for 1923 and 1924 are all as set forth in the answer of said defendant state tax commission to the amended writ herein:

"(2) That no legal proceeding was instituted by said relator or any of the officers of Socorro county to compel the distribution of the moneys raised by said tax levies for 1922 and 1923 upon the basis of a larger proportionate share thereof for salaries than that shown by the budget estimates to pay the salaries of said county officers;

"(3) That the records of the county commissioners of said county show no demand by said relators or any of said officers for a larger proportionate share for salaries of the revenue raised by said tax levies than the amount of the budget estimates. The said relators, however, object to the introduction in evidence of said facts, on the ground that the same is irrelevant and immaterial to the issues herein.

"It is further stipulated by said parties that the budget estimates made in 1922 of the amount necessary to pay the salaries of county officers of said county for the year 1923 was made by the county commissioners upon instructions from and under the direction of the state tax commission. The state tax commission, however, objects to the introduction of the evidence of said facts on the ground that the same is immaterial and irrelevant upon the issues herein."

The court entered judgment in favor of the relator, finding the facts as stated in the stipulation, and directed that a peremptory writ of mandamus issue against the defendants, commanding the board of county commissioners to include in its budget estimates for county purposes for the year 1925 the sum of $5,726.35 over and above the amount necessary for the current expenses of Socorro county for the year 1925, and to certify such budget estimate to the state tax commission for approval, as now provided by law; and at its October, 1924, meeting to make and order a special levy on all taxable property of Socorro county as shown by the tax rolls of said county for such year sufficient to raise said sum of $5,726.35, on the face of the tax roll, and that such levy be kept within the 5-mill limitation provided by law for county pur-

poses; and commanding the state tax commission to
approve such budget estimates, and to certify such ap-
proval to the proper officers of Socorro county as pro-
vided by law.  The case is now before this court upon
the appeal of the state tax commission from this
judgment.

[**1**] 1.   Under the provisions of the Salary Act of
1915 (chapter 12, Laws 1915) Socorro county came
within the classification of first-class counties, and
under the provisions of section 19 of that act was
also classified as a first-class county by the state
auditor in 1921.   Acting upon the resolution of the
state tax commission, set out in full in the case of
Love v. Dunaway, 28 N. M. 557, at pages 560, 561,
215 P. 822, of the opinion in that case, the budget
estimates of salaries for Socorro county was fixed upon
the basis of such salaries for a second-class county.
Under the decision in this case Socorro county was
entitled to be classified as a first-class county, and in
changing the basis of salary levies the board of county
commissioners acted without authority.   It is conceded
by the appellants that the change in classification
by this order was erroneous, but they contend that
because the creation of Catron county from the ter-
ritorial limits embraced within Socorro county by the
Legislature in 1921 reduced the valuation of tax-
able property in Socorro county below $14,000,000, the
minimum valuation for first-class counties under the
Salary Act of 1915, the classification of Socorro coun-
ty was automatically reduced from that of a county
of the first class to that of a county of the second
class.   Catron county was created by chapter 28, Laws
1921, which is entitled ''An act creating the county
of Catron and providing for the government thereof,
and the payment of its indebtedness.'' While Catron
county is by the seventh section of that act classed as
a fourth-class county, nowhere is any reference made
to a change of classification of Socorro county.   As no
such reclassification was made by this act, it is un-
necessary to consider whether, if it had been, the legis-

lation would have been special, and in conflict with
article 4, section 24, Constitution of New Mexico. The
manner in which counties were to be reclassified was
at that time specifically provided for by section 19 of
the County Salary Act of 1915, and there is nothing to
indicate any legislative intent to repeal, modify, or
amend this section. It is a rule of statutory construc-
tion that repeals by implication are not to be favored,
and that where two statutes can be construed together,
and preserve the objects to be obtained by each, they
should be so construed. James v. Board of County
Commissioners of Socorro County, 24 N. M. 509, 174
P. 1001. This question is very fully discussed in the
James Case, and needs no elaboration here. We do
not think that, under the principles laid down in that
case, there is anything to indicate any intention on the
part of the Legislature to repeal, amend, or modify
the County Salary Act of 1915 as to the manner of
classifying counties, as therein provided.

[2-5] 2-5.    Appellants contend that, under the
provisions of the Bateman Act (sections 1227-1233,
inclusive, Code 1915), the board of county commission-
ers of Socorro county have no authority in 1924 to levy
a tax to make up a deficiency in salaries for the year
of 1923. The application of the Bateman Act to this
and similar questions has been before this court in
several cases since the passage of the Salary Act of
1915.

In the case of James v. Board of County Commis-
sioners, supra, the sheriff of Socorro county had in-
stituted an action against the board of county com-
missioners for a balance due for the salaries of him-
self and deputies from a previous year. It was con-
tended that the Bateman Act was repealed by the
County Salary Act of 1915, provided for the payment
of salaries of county officers. The provision of the
Act of 1915, which was considered in the James Case,
was section 15, which is as follows:

''Should the county salary fund at any time be insufficient
to pay the salaries and expenses provided for to be paid

therefrom, or any part thereof, the deficiency shall be paid from the current expense fund, which fund shall be reimbursed to the extent of any deficiency so paid as soon thereafter as funds shall be available in the county salary fund. Any surplus remaining in said county salary fund at the end of any calendar year may be transferred to the credit of the county road fund or current expense fund upon order by the county commissioners."

In considering this question Mr. Justice Roberts, at page 517 (174 P. 1004) of the opinion said:

"By this section we think it is apparent that the Legislature recognized that thehe might be temporary deficiencies in the county salary fund, and simply provided that in such cases, if there was any money in the current expense fund, the deficiency should be paid out of the current expense fund, subject to reimbursement from the salary fund upon moneys becoming available therein. A large portion of the salary fund was made up from fees earned by officers under existing laws. These necessarily would come in irregular amounts. But the fact that the county treasurer was authorized to pay the deficiency in county salaries for any quarter out of the current expense fund does not, in our judgment, tend to indicate an intention on the part of the Legislature to repeal the Bateman Act. Under the Bateman Act the county officer was entitled to pro rate with the creditors of the county in the moneys collected for the current year, and the mere fact that the Legislature had created a salary fund, made up of certain moneys, and provided that in the event of a deficiency money should be transferred to such fund from the current expense fund, would not indicate an intention on the part of the Legislautre to pay the salaries of the county officers, regardless of the moneys collected during the current year. We think such officers would still be entitled to pro rate with the creditors of the county in the moneys collected for the current year, and the mere fact that the Legislature had created a salary fund, made up of certain moneys, and provided that in the event of a deficiency money should be transferred to such fund from the current expense fund, would not indicate an intention on the part of the Legislature to pay the salaries of the county officers, regardless of the moneys collected during the current year. We think such officers would still be entitled to pro rate with the creditors of the county for the current year, as authorized by the Bateman Act. There is no inconsistency between the provisions of the two acts in this regard."

In the case of Sena v. Board of Commissioners of Guadalupe County, 27 N. M. 461, 202 P. 984, it was decided that:

"(1) The indebtedness incurred by a county for the publication of the delinquent tax list, under Laws 1917, c. 80,

§§ 1 and 17, and Laws 1919, c. 43, § 3, is within the provisions and limitations of the Bateman Act."

In Santa Fe Water & Light Co. v. Santa Fe County et al., 29 N. M. 538, 224 P. 402, it was held that the limitation against the payment of unpaid debts provided by the Bateman Act (sections 1227-1233, Code of 1915) applies to debts created for necessities such as water and lights for the use of a courthouse, or others which may be arbitrarily placed against the county, or the municipality, with the same force as to those that may be voluntarily created by such county or municipality. In the opinion in that case, at page 545 (224 Pac. 405,) it was said:

"The duty to publish the delinquent tax list with the incidental cost thereof was not a matter resting within the judgment or discretion of the county commissioners, or other county officials. They had nothing to say with respect to whether such a debt should be created. It was arbitrarily made their duty to publish it and the county to pay the cost thereof, and certainly such a proceeding is necessary to the successful conduct of the business of the county. We think the purpose served by the act in question is to force the enumerated municipal corporations to keep within their income, in order to prevent the creation of excessive obligations which cannot be currently paid, but lap over from year to year with the result that creditors are long delayed in the collection of their just debts and the municipality is peoned in its effort to pay. * * Had it been intended by the Legislature that only such debts as are voluntarily created by a county or other municipality are excluded from its operation, the natural and logical thing would have been to say so in clear and unambiguous language."

See, also, Johnston v. Board of County Commissioners of Bernalillo County, 12 N. M. 237, 78 P. 43; Optic Publishing Co. v. Board of County Commissioners of San Miguel County, 27 N. M. 371, 202 P. 124.

It is contended by the appellee that chapter 16, Laws of 1919, was intended to provide for the payment of the salaries of county officers in full, and to take such salaries out of the operation of the Bateman Act. Prior to the enactment of the law of 1919 relative to salaries of county officers, the county salary fund, as provided in chapter 12 of the Laws of 1915, was made up, among other things, of fees; com-

missions, mileage and per diem collected by the several officers, and 8 per centum upon the amount of all taxes and licenses collected from all sources; and section 15 provided that should the county salary fund at any time be insufficient to pay the salaries and expenses of county officers, or any part thereof, the deficiency shall be paid from the current expense fund, which fund shall be reimbursed to the extent of any deficiency so paid as soon thereafter as funds shall be available in the county salary fund. Any surplus remaining in such salary fund at the end of any calendar year may be transferred to the credit of the county road fund or current expense fund upon order by the county commissioners. This was the law appliciable to the salaries of county officers at the time of the decision in James v. County Commissioners, supra.

The title of chapter 16, Laws of 1919, is "An act providing for the payment of salaries of county officers and repealing section 13 of chapter 12 of the 1915 Session Laws of New Mexico." Sections 1, 2, 3, and 4 of that act provide as follows:

"Section 1. That the boards of county commissioners shall hereafter levy a tax sufficient to pay the salaries and expenses of county officers whose emoluments and expenses have heretofore been paid out of the salary fund as created by chapter 12, of the 1915 Session Laws of New Mexico.

"Sec. 2. That such tax, when collected, shall be covered into the county salary fund, and together with the fees, commissions, mileage, and per diem collected under the provisions of section 8, chapter 12, of the 1915 Session Laws of New Mexico, shall constitute the county salary fund of the county in which the same is collected, and no warrant shall be drawn upon, nor paid from, said county salary fund, except for the salaries and expenses by law payable therefrom.

"Sec. 3. That no surplue arising in said county salary fund shall be transferred to any other fund, but such surplus shall be transferred to, and become a part of, the county salary fund for the year following the arising of such surplus fund.

"Sec. 4. The provisions of section 13, chapter 12, 1915 Session Laws of. New Mexico shall not apply to taxes levied and assessed for the eighth fiscal year of the state of New Mexico and the fiscal years thereafter following."

It clearly appears that the purpose of section 1

of this act was to substitute the tax therein required to be levied for the 8 per centum of all taxes and licenses collected from all sources, required by section 13 of the Salary Act of 1915 to be covered into the county salary fund. Section 2 of the act of 1919 expressly provides that this tax, with the fees, commissions, mileage, and per diem collected under the provisions of the County Salary Act of 1915, shall constitute the county salary fund which, prior to the passage of this act, was made up of such fees and the 8 per centum above referred to. Section 4 of the Act of 1919 expressly repeals section 13 of chapter 12 of the Laws of 1915, and section 3 of the Act of 1919 provides that the surplus from the salary fund shall remain therein, but has no effect upon the provisions of section 15 except to provide that the surplus from the salary fund shall remain therein, instead of being transferred to the credit of the county road fund or current expense fund. There is no change in the law relative to the payment of salaries quarterly, nor to the use of the current expense fund temporarily for this purpose, nor to the method of supplying any deficiency. The mere fact that the law of 1919 substitutes a definite item of taxation to be levied for county salaries for the indefinite item of 8 per centum of all taxes to be collected under the law of 1915, and that it requires any surplus to be retained, instead of being paid into the county road fund or current expense fund, does not change the law relative to the payment of any deficiencies from county salaries which may remain after the funds provided therefor in any year have been exhausted, and in that respect it remains the same as when the James Case was decided.

It is argued by appellee that this case stands upon the same basis as that of Capital City Bank v. Commissioners of Santa Fe County, 27 N. M. 541, 203 P. 535, where it is held that:

"The Bateman Act is no defense to an action to recover judgment on certificates of indebtedness issued by a county in anticipation of the collection of a special tax levy, and payable from the proceeds of that levy, where the levy produced

sufficient funds to pay the certificates, but the funds were diverted to other purposes."

The facts in that case disclose that the Legislature, at its special session in 1917, passed an act permitting a levy of one mill for the years 1917 and 1918, to raise funds for county highways, and to permit counties to anticipate the collection of the taxes by the issue and sale of certificates of indebtedness. A levy was made in Santa Fe county for this purpose, and certificates of indebtedness to the amount of 2,000 were issued. The levy brought more than enough money into the fund to pay the certificates, but only one was paid. The balance of the money was diverted by the county authorities for other purposes. A judgment was obtained against the county for the unpaid certificates, and a special levy was ordered to pay the judgment. This court upheld the decision of the lower court that the Bateman Act had no application to such a situation, and in the opinion in that case the court said:

"Here it is admitted that the income from the levy out of which these certificates were to be paid was more than sufficient to meet them. The county authorities, in violation of the plain duty to conserve this fund for the payment of these certificates diverted to other uses, and then say, when the certificates are presented, that they cannot be paid for lack of available funds. Such a contention does not appeal to a sense of justice."

It is argued that the same principle is involved in this case, and that the County Salary Act of 1919 created a special fund for a special purpose, as in that case; and that the funds which should have been raised for the county salary fund for Socorro county for the year 1923 were, by their failure to provide for the same, diverted by the county commissioners and state tax commission to other funds in plain violation of law. It is admitted that the funds were not collected and then diverted, as in the Bank Case, but it is contended that the funds were diverted by a reduced budget estimate and levy; that the Legislature provided for the salaries and expenses of county of-

ficers just as it did for the levy of the one-mill tax, and a failure to levy a tax sufficient to pay such salaries was just as much of a diversion of the funds as if the money had been collected and then diverted. If a sufficient amount had been collected in the county salary fund to pay such salaries, and it had been diverted to other purposes, a case more nearly similar to that of the Bank Case would be presented; but no such facts appear in the instant case.

The real distinction to be drawn between the present case and that of the Capital City Bank v. County Commissioners, lies in the fact that the decision in the Bank Case is bottomed on the proposition that the claim there involved was payable out of a special fund only and was not entitled to share in the general funds of the county for any deficiency in the amount collected, while we hold in this case that claims for salaries of county officers are entitled to participate in the general fund as to any balance due after the exhaustion of the salary fund, to the same extent as under the law construed in the James Case. There may be other points of distinction which have not been argued, and are not, therefore, further noticed.

We are of the opinion that the ruling in the James Case is controlling here, and that the county commissioners of Socorro county had no right to include in its budget for the year 1925 a tax levy to pay for the deficiency in the county salaries in 1923 occasioned by the erroneous levy therefor in 1922.

The judgment of the district court is therefore reversed, and the cause remanded, with instructions to dismiss the writ of mandamus, and it is so ordered.

BOTTS, J., concurs.

PARKER, C. J., not having heard the oral argument in this case, did not participate in the opinion.