282 P.2d 1101

W. S. CAMPBELL, Plaintiff-Appellee,

v.

VILLAGE OF GREEN TREE, etc., Defendant-Appellant.

No. 5844.

Supreme Court of New Mexico.
April 21, 1955.

J. Benson Newell, Las Cruces, for appellant.

Frazier, Cusack & Snead, Roswell, for appellee.

LUJAN, Justice.

The appellee filed a claim with the Board of Trustees of the Village of Green Tree for $549.22, asserted to be due him for back salary as acting police judge and also as acting clerk and bookkeeper. This claim was approved by the former board of trustees of the village.

Appellee alleged as follows:

"1. That he is a resident of Green Tree, Lincoln County, New Mexico, and the Defendant is a duly organized and existing municipal corporation in Lincoln County, New Mexico.

"2. That during the months of January, February, March and April, 1952, the Plaintiff was the duly appointed, qualified and acting Police Judge of said municipality at a salary of $100.00 per month, and Plaintiff was also the duly appointed, qualified and acting Clerk and bookkeeper for Defendant at a salary of $75.00 per month; that there is due and owing from Defendant to Plaintiff a balance of $549.22 for salary for said months.

"3. That about January 8, 1951, the present Mayor and a majority of the present Board of Trustees of the Defendant, instituted proceedings to disincorporate the village of Green Tree but the Defendant was not disincorporated; that by reason of litigation in connection with disincorporation it was impossible for the former officials of the defendant to collect the license fees and other revenues due and owing to the defendant; that the litigation in connection with disincorporation was concluded subsequent to the time the present officials assumed office; that the present officials of the Defendant are making no effort to collect revenues to pay the obligations of the Defendant, and will not do so unless directed by this Court to do it."

The appellant admitted the allegations of paragraph one of the complaint, and by way of an affirmative defense to the allegations of paragraph two alleged:

"* * * That if it be established that the plaintiff was the 'duly appointed, qualified and acting Police Judge' and 'acting Clerk and bookkeeper' for the defendant at and during the time specified in said complaint, and at the salaries therein set forth; that the preceding Board of Trustees in employing said plaintiff and retaining him in said positions of employment for said period of time, to-wit: January, February, March and April 1952, violated the provisions of § 7-607 New Mexico Statutes 1941 Annotated, commonly known as 'The Bateman Act' in that said board contracted a debt during the then current fiscal year of 1952 (ending June 30th, 1952) which at the end thereof, could not be paid out of the money actually collected and belonging to said current year, and because of such fact said claim is null and void. That the cash balance available on June 30th, 1952 in the hands of said Municipality in its General Fund was the sum of $49.01; that the cash balance available on June 30th, 1952, in the Water Fund of said Municipality was the sum of $20.72.

"That in addition to the claim of Plaintiff herein sued upon the said former Board of Trustees had contracted other debts and obligations for the same current fiscal year amounting to the sum of $3,665.80, which at the present time remain unpaid because of the lack of funds; and such balances remaining on hand as of June 30th 1952, under the law must be apportioned among all existing creditors for said current fiscal year; a complete list of same will be filed in this case and be made a part of this Answer."

Upon the issues so framed the cause was tried to the court without a jury which resulted in a judgment for plaintiff in the sum of $549.22 and defendant appeals.

The court found:

"That the Defendant was regularly incorporated pursuant to the provisions of Sec. 14–401, et seq., 1941 NMSA, and is still in existence as a municipal corporation.

"That the Defendant at the time the administration changed had in its general fund for the fiscal year 1951–52 a balance of $49.01, and in its water fund for year a balance of $20.72.

"That the present administration paid indebtedness of $258.71 in full for account outstanding for the 1951–52 fiscal year, but has failed and refused to pay the plaintiff.

"That the County Treasurer holds for the credit of the Defendant in excess of $6400.00, which represents

taxes voluntarily paid by property owners of the Defendant on the basis of a levy made for the fiscal year 1950–51 in order to amortize water bonds authorized by the voters, but which bonds were never issued because of the disincorporation proceedings, and other legal proceedings; that the time for issuing said bonds has now expired, and they cannot be issued.

"That in addition to the balances turned over to the present administration specified in finding No. 6, the present administration has collected $42.00 for the fiscal year 1951–52, and can readily collect an additional $150.00.

"That for current operating expenses for the fiscal year 1951–52 there are outstanding the following unpaid account, evidence by vouchers duly approved and filed by the former Board of Trustees, to-wit:

| | |
|---|---|
| Attorney Fee | $200.00 |
| Harley A. Parnell | 50.00 |
| Plaintiff | 549.22 |
| Jim Ayres | 455.00 |
| | $1254.22" |

The court concluded as a matter of law:

"1. That Plaintiff, is entitled to Judgment against Defendant for the sum of $549.22, and costs.

"2. That the Bateman Act, Sec. 7–607, 1941, N.M.S.A., (11–6–6, 1953 Comp.) enacted in 1897, does not include the Defendant, and is not applicable to this cause.

"3. That it is the duty of Defendant to pay this Judgment from any funds available for such purposes, and, if they be insufficient, to arrange for a tax levy in the budget for the fiscal year 1953–54."

The decisive question for our consideration is whether or not the Village of Green Tree, a municipal corporation, is included within the provisions of Section 11–6–6, 1953 Comp., known as the Bateman Act, which is Section 15 of Chapter 42, Laws of 1897.

The plaintiff seriously contends that the Village of Green Tree does not come within the provisions of the above section while the defendant contends that it does.

In approaching this question we must consider the statute as a whole and ascertain therefrom the mischief the lawmakers intended to remedy, preceding its passage, in order that we may arrive at the legislative intent. At the time Chapter 42 supra, was passed, practically every county and a majority of other municipal corporations within the then territory were in a bad shape financially, and it was for this reason that the Legislature provided the means whereby they might ascertain and deter-

mine the amount of their indebtedness, other than bonded indebtedness, that may be floating, outstanding, and unpaid, and how they should be liquidated.

The title of the act reads:

"An act for the purpose of funding the floating indebtedness of counties, boards of education, *municipal corporations* and school districts and for other purposes.

"Section 1. That after the passage of this act, it shall be the duty of the board of county commissioners of the several counties of the Territory, and of the boards of education in all municipalities in the Territory, *the proper officials and representatives of municipal corporations of all kinds whatsoever,* and of the school directors of the several school districts in the different counties in the Territory, to ascertain and determine the amount of the indebtedness other than bonded indebtedness of the several counties, boards of education, *municipal corporations* and school districts that may be floating, outstanding, and unpaid, however evidenced. * * * (Emphasis ours.)

"Sec. 7. It shall be the duty of the board of county commissioners of the several counties in this Territory, and *also* that of boards of education, school districts and all *municipal corporations of whatsoever kind or class,* to issue coupon bonds of said county, board of education, school district or *municipal corporation, of whatever kind or class,* and they are hereby respectfully authorized and empowered to issue said bonds to any claimant proving to be such for the amount and in the manner hereinbefore provided. (Emphasis ours.)

\*    \*    \*    \*    \*    \*

"Sec. 11. * * * The county assessor, in making his regular assessment of property situate within the limits of any incorporated town, city, school district *or other municipality* * * *." (Emphasis ours.)

In the same act the Legislature provided against a recurrence of such conditions as existed prior to its enactment. Section 15, Section 11-6-6, 1953 Comp., reads:

"From and after the date of the passage of this Act it shall be unlawful for any board of county commissioners, city council, town trustees, board of education, *board of trustees,* or board of school directors of any school district, for any purpose whatever to become indebted or contract any debts of any kind or nature whatsoever dur-

ing any current year which, at the end of such current year, is not and cannot then be paid out of the money actually collected and belonging to that current year, and any and all kind of indebtedness for any current year which is not paid and cannot be paid, as above provided for is hereby declared to be null and void, and any officer of any county, city, town, school district or board of education, who shall issue any certificate or other form of approval of indebtedness separate from the account filed in the first place or who shall, at any time, *use the fund belonging to any current year* for any other purpose than paying the current expenses of that year, or who shall violate any of the provisions of this act, shall be deemed guilty of a misdemeanor \* \* \*." (Emphasis ours.)

In order to validate the void indebtedness referred to in the above section the Legislature enacted Section 18 of the same act which provides:

"The void indebtedness mentioned in Section 15 shall remain valid to the extent and for the sole purpose of receiving any money which may afterwards be collected and belongs to the current year when they were contracted, and the collection thereof when made shall be distributed *pro rata*

among the creditors having the void indebtedness and in the event all of the valid and void indebtedness of any current year are paid in full and there is money for that current year remaining the sum shall be converted into the fund for the next succeeding current year." Section 11–6–9 of 1953 Comp.

It is inconceivable that the Legislature having prohibited the various bodies, specifically enumerated in Section 15, supra, from incurring indebtedness which could not be paid out of money collected for that current year would exempt villages. It is apparent that the words "board of trustees" appearing in this section of the act were simply placed in an unusual position. But we believe, and so hold, that it was the intention of the Legislature to use such words in relation to municipal corporations of *whatsoever* kind and class referred to in Sections 1, 7 and 11 of the act, otherwise such words would be meaningless.

In addition we have made a detailed examination of the statutes relating to official bodies in force in 1897 and can find no body or board to which the term "board of trustees" could be related except to board of trustees of a village.

Whether or not the appellee was entitled to hold the office of Police Judge by virtue of his appointment, as such, by the Board of Trustees of the Village of Green Tree,

we do not decide. If he was not an officer de jure by such appointment, he was nevertheless an officer de facto and entitled to his salary for services rendered. See, 43 Am.Jur. Vol. 43, p. 224, Section 470 et seq.

As to the amount which the appellee is entitled to recover for services rendered, the same is governed by § 11-6-9 supra. Were it not for this section all claims for fees, salaries and perquisites of any municipal officer that were not and could not have been paid by the money actually collected at the close of the year when the services were rendered or the fees and perquisites were contracted, would be absolutely null and void. It provides that such void indebtedness shall be validated to the extent only of. receiving any money which may afterwards be collected belonging to the current year when such claim was contracted, and when collection of such monies was made that then they shall be distributed pro rata among the creditors having such void indebtedness. See, Territory ex rel. Adair v. Board of County Commissioners, 12 N.M. 131, 75 P. 38.

█ Appellee contends that adequate funds are now available to pay him, and, therefore, there would be no void indebtedness even under the Bateman Act, and that the fund amounting to $6,400 collected in the fiscal year 1950–51 should be subject to the debts of the village.

We do not agree with this contention. To do so would be to circumvent the very spirit and letter of the law as provided for in sections 11-6-6, 11-6-9 supra, and 14–18–9 of 1953 Compilation. The sum of money referred to by counsel was derived from a special assessment levied for the year 1950 for the sole purpose of purchasing a waterworks for the village which never materialized; consequently it became a trust fund to be applied by the board of trustees solely to the purpose for which it was levied, whenever it decides so to do.

Under § 14–18–9 supra, "all moneys received on any special assessment shall be held by the treasurer as a special fund to be applied to the payment of the improvement for which the assessment was made, *and said money shall be used for no other purpose whatever* unless to reimburse such corporation for money expended for such improvements."

Clearly the board of trustees would not be authorized to pay the obligations of the village chargeable to the general fund for services rendered by its officials in 1952 from the special fund levied for the year 1950 and which was earmarked for that purpose.

It follows from what we have said that the trial court was in error. Its judgment should be reversed and the cause remanded to the district court with directions to set the same aside and for such further pro-

ceedings, not inconsistent with the views herein expressed, as shall seem meet and proper.

It is so ordered.

COMPTON, C. J., and SADLER, Mc-GHEE and KIKER, JJ., concur.